IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2016

## LAVONTA LAVER CHURCHWELL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-A-260      Seth Norman, Judge**

---

**No. M2015-01567-CCA-R3-PC – Filed September 21, 2016**

---

The Petitioner, Lavonta Laver Churchwell, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions of two counts of first degree felony murder, two counts of especially aggravated robbery, and two counts of criminally negligent homicide and resulting effective sentence of life in confinement. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Lavonta Laver Churchwell.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; Glenn R. Funk, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On August 26, 2008, the appellant and two other men entered the East Nashville home of Dr. Pierre Robert Colas, an assistant professor of anthropology at Vanderbilt University. State v. Lavonta Laver Churchwell, No. M2011-00950-CCA-R3-CD, 2013 WL 430118, at *1 (Tenn. Crim. App. at Nashville, Feb. 4, 2013), perm. to appeal denied,

(Tenn. 2013).  The men shot and robbed Dr. Colas and his sister Marie Colas, who was visiting her brother from Germany.  Id.  Dr. Colas died at the scene, and Ms. Colas died five days later.  Id. at *2.  In January 2009, the Davidson County Grand Jury indicted the Petitioner for two counts of first degree premeditated murder, two counts of first degree felony murder, and two counts of especially aggravated robbery.

At trial, the Petitioner testified that "he was not involved in the murders and denied having told [any fellow jail inmates] that he was involved."  Id. at *4.  The jury convicted him of two counts of felony murder, two counts of especially aggravated robbery, and two counts of criminally negligent homicide as a lesser-included offense of first degree premeditated murder.  The trial court merged the criminally negligent homicide convictions into the first degree felony murder convictions, and the Petitioner received concurrent sentences of life for the murder convictions and twenty years for the especially aggravated robbery convictions.  Id. at *1.

The Petitioner appealed his convictions to this court.  In concluding that the evidence was sufficient to support the convictions, this court summarized the evidence against him as follows:

> Viewed in the light most favorable to the State, the evidence showed that the victims both died of gunshot wounds to the head, and the victims' credit cards were taken from them.  Two inmates testified that, while incarcerated with Defendant, Defendant confessed that he and two others shot the victims and stole their credit cards.  The jury accredited those witnesses.  In recounting Defendant's confession, both witnesses were able to provide information that the police had not released to the media or the public.  Defendant's cell phone records showed that Defendant was in the area where the murders occurred.  George Cody, who Defendant stated was involved in the murders, left DNA at the scene and on the murder weapon.  The murder weapon and the victim's credit cards and IDs were recovered from Cody's home.  Forensic testing showed that the .380 semi-automatic handgun taken from Cody's home was consistent with the weapon that fired the projectiles recovered from the victims' bodies.  Defendant told detectives that he was in Antioch at the time of the murders, but Defendant's cell phone records showed that he was in the area of the murders when the murders occurred.  We conclude that the evidence was sufficient to support Defendant's convictions.

Id. at \*6.

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely petition for post-conviction relief, alleging that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and counsel filed an amended petition, claiming that trial counsel was ineffective for failing to present a credible defense to the jury; failing to object to the admission of evidence derived from a search warrant issued for one of the Petitioner's telephones; and failing to communicate with him, discuss his case adequately with him, and prepare for trial.

At the 2015 evidentiary hearing, the Petitioner testified that his family retained trial counsel to represent him. The Petitioner was in jail for more than one year while awaiting trial, but counsel met with him in jail only one time two or three days before trial. Counsel also never met with him when he appeared in court. Counsel never came to court for the Petitioner's hearings, and the Petitioner did not know if counsel filed any pretrial motions.[1] The Petitioner could not telephone counsel from jail and could not write letters to him because the Petitioner did not have his address. The Petitioner's family telephoned counsel, but counsel did not respond, and counsel did not give any discovery materials to the Petitioner before trial. At the time of the killings, the Petitioner had four cellular telephones. After trial, he received discovery and learned that the police had obtained a search warrant for only one of the telephones. He explained, "They had a search warrant for a phone that they said that was used that night, but once they seen I never used that phone that night they went and looked at another phone that . . . they didn't have a search warrant for."

The Petitioner testified that counsel did not use an investigator and that the Petitioner did not know the defense strategy for his case. Counsel told him that it would be in the Petitioner's best interests to testify because the Petitioner knew what did and did not happen on the night of the crimes and because the Petitioner did not have any witnesses. At trial, the Petitioner testified that he was somewhere else at the time of the killings. The Petitioner said that counsel should have questioned the people the Petitioner was with on the night of the murders and "looked more into [the] case." Counsel also should have talked with the Petitioner face to face. The Petitioner said that on the night of August 26, 2008, he and Raymond Wilson were in the back yard of Nathan Carson's home. Carson was the Petitioner's cousin and codefendant. Wilson would have provided

---

[1] Our review of the trial record reflects that counsel filed four motions in limine: a motion to exclude evidence not provided in discovery, a "Jencks" motion, a motion to exclude witnesses from testifying pursuant to Tennessee Rule of Evidence 615, and a motion to exclude character and prior bad act evidence pursuant to Tennessee Rule of Evidence 404.

the Petitioner with an alibi, and the Petitioner told counsel at trial that he wanted to present an alibi witness.

On cross-examination, the Petitioner testified that the home actually belonged to Carson's girlfriend, not Carson, and was "[a]round the corner" from Dr. Colas's house in East Nashville. He said that Wilson was his friend and that Wilson was incarcerated at the time of the evidentiary hearing. The Petitioner stated that when he spoke with counsel two or three days before trial, counsel "was telling me like that we were going to go to trial, he asked me . . . what I had to offer, then he was telling me we were gonna testify and things like that." The Petitioner thought counsel should have tried to suppress the cellular telephone records received by the police. Counsel also should have used cellular telephone records to show that the Petitioner was talking on one of his telephones at the time of the killings. He stated, "[H]ow could I have been on the phone during the murder if I'm committing the murder?"

Trial counsel testified that at the time of the evidentiary hearing, he had been practicing law almost twenty years and that most of his practice involved criminal defense. The defense's strategy was that the Petitioner was in a car in someone's backyard when Pierre and Marie Colas were killed. A friend was with him, and they were listening to music and talking. Jailhouse informants testified against the Petitioner, and counsel "thought [the Petitioner] had a good chance of explaining away some of the things that the State was trying to put forward against him." The Petitioner talked with two defense investigators before trial. Counsel stated that the Petitioner "came across when we were talking in our discussions, and when he talked to my investigator, as credible about what happened." Thus, counsel had the Petitioner testify at trial because the Petitioner needed to tell the jury his whereabouts on the night of the crimes. Counsel visited with the Petitioner "on some" occasions when the Petitioner came to court. The Petitioner was "very interactive with his family," and his family came to counsel's office on Sundays and e-mailed counsel's assistant. The Petitioner never raised an issue regarding a lack of communication with counsel.

Counsel testified that he usually did not give discovery to a client in jail "for the exact reason as what transpired, where other people start getting information to try to help their cases out." However, counsel shared information with the Petitioner, and they "went through the timeline of things that had happened and what the State was trying to say was going to happen." Counsel did not speak with the Petitioner every time the Petitioner came to court because sometimes there was nothing new to discuss. Most of the time, though, counsel "would let him know what was going on." Counsel did not have a problem with the Petitioner, and the Petitioner did not have a problem with counsel.

On cross-examination, trial counsel testified that the Petitioner maintained that he was not at the scene of the crimes and that someone was sitting in the car with him at the time of the killings. Counsel never spoke with Wilson and could not recall if the Petitioner mentioned that specific name to him. Counsel did not think he filed a notice of alibi, and he acknowledged that he always had 100 to 200 cases pending at any given time. Counsel met with the Petitioner in jail but did not keep a log of jail visits. He spoke with the Petitioner's family by telephone and text messages.

In a written order, the post-conviction court denied the petition for post-conviction relief. As to the Petitioner's claim that counsel was ineffective for failing to investigate his case and prepare for trial adequately, the court specifically accredited counsel's testimony that he discussed the issues of the case with the Petitioner, that he communicated with the Petitioner's family, that he worked with investigators, and that the investigators spoke with the Petitioner before trial. As to the Petitioner's claim that counsel was ineffective for failing to subpoena a witness to testify at trial, the court noted that the Petitioner failed to present the witness at the evidentiary hearing. Finally, as to the Petitioner's claim that counsel was ineffective with regard to cellular telephone records, the court found,

> By asserting that counsel was deficient both by failing to move to suppress phone records and by failing to utilize those same phone records to support an alibi, Petitioner has failed to establish that counsel was deficient or that failure to move for suppression of the phone records prejudiced the defense.

Thus, the court concluded that the Petitioner was not entitled to relief.

## II. Analysis

The Petitioner contends that the post-conviction court erred by denying his petition for post-conviction relief because trial counsel failed to communicate with him adequately; failed to provide him with discovery until after the trial; "utterly left him in the dark until two or three days prior to trial" due to counsel's "massive case load of 200 or more pending criminal cases at the time of trial"; and failed to interview a key alibi witness. The State claims that the Petitioner has failed to show that he is entitled to relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the

conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

As to the Petitioner's claim that counsel failed to communicate with him about his case, counsel testified that he met with the Petitioner in jail and during court hearings and that the Petitioner spoke with two defense investigators before trial. He also testified that he talked with the Petitioner about the State's timeline of the crimes and what the State was going to allege at trial. Although the Petitioner testified that he did not even see

counsel until two or three days before trial, the post-conviction court specifically accredited counsel's testimony over that of the Petitioner.

As to the Petitioner's claim that counsel failed to provide him with discovery until after the trial, counsel stated that he usually did not provide clients with discovery in jail but that he shared information about the case with the Petitioner. The Petitioner claimed at the evidentiary hearing that he did not learn until after trial that the police had obtained information from a cellular telephone for which they did not have a warrant and that counsel should have moved to suppress the evidence. However, he did not present any evidence of that claim at the hearing. We note that our review of the trial record shows that the State did not introduce any search warrants or telephone records into evidence at trial.

Lastly, as to the Petitioner's claim that counsel was ineffective for failing to have alibi witness Wilson testify at trial, the Petitioner failed to present Wilson's proposed testimony at the evidentiary hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit Wilson may have offered to the Petitioner's case. Id. Accordingly, the Petitioner has failed to demonstrate that he received the ineffective assistance of counsel.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE